**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| TIA RHOADES, | : |
| | : Civil Action No. 11-589 (JBS-KW) |
| Plaintiff, | : |
| | : |
| v. | : **OPINION** |
| | : |
| CARL DANBERG, et al., | : |
| | : |
| Defendants. | : |

**APPEARANCES:**

TIA RHOADES, Plaintiff pro se
SBI # 506842
Delores J. Baylor Women's Correctional Institution
New Castle, Delaware 19720

**SIMANDLE**, District Judge:

Plaintiff Tia Rhoades, ("Rhoades"), currently confined at the Delores J. Baylor Women's Correctional Institution ("BWCI") in New Castle, Delaware, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of her constitutional rights. At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint must be dismissed for failure to state a plausible constitutional claim.

## I. BACKGROUND

Rhoades brings this action, pursuant to 42 U.S.C. § 1983, against Delaware Department of Correction supervisory officials, correctional officers, and an inmate. Rhoades was attacked by inmate Holly Rodocker ("Rodocker") on May 30, 2011. As Rhoades left the shower, Rodocker threw scalding water from a hot-pot onto Rhoades, pushed her into the tub, and repeatedly punched her. Another inmate and Correctional Officer ("C/O") Chuckwonnze ("Chuckwonnze") pulled Rodocker off Rhoades. C/O Woodston ("Woodston") and Captain Jones ("Jones") asked Rhoades to get dressed and Woodston escorted Rhoades to medical where she was treated. Photographs were taken of her injuries. In addition, Warden Wendi Caple ("Warden Caple") and Jones looked at the wounds. Rhoades received continuing medical treatment that consisted of cleaning and bandaging the wound from May 30, 2011 until June 10, 2011. Rhoades wrote to Warden Caple and Deputy Warden Darrin Carter ("Deputy Warden Carter") following the incident.

Rhoades alleges that the administration is aware that, in the past, hot-pots have been used as weapons but they continued to allow inmates access to hot-pots by placing one on each unit. Rhoades alleges that as an inmate she has a reasonable expectation to be safe and free from assault/harm and to be protected by the staff and administration at the BWCI.

## II. STANDARDS FOR SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008); Erickson v. Pardus, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds pro se, her pleading is liberally construed and her Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. Neitzke, 490 at 327-28; Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989); see,

e.g., Deutsch v. United States, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend her complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. See Ashcroft v. Iqbal, -U.S.-, 129 S.Ct. 1937 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." Id. at 1949. When determining whether dismissal is appropriate, the Court conducts a two-part analysis. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim

4

are separated. Id. The Court must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions. Id. at 210-11. Second, the Court must determine whether the facts alleged in the Complaint are sufficient to show that Plaintiff has a "plausible claim for relief."[1] Id. at 211. In other words, the Complaint must do more than allege Plaintiff's entitlement to relief; rather it must "show" such an entitlement with its facts. Id. "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. SECTION 1983 ACTIONS

Rhoades brings this action pursuant to 42 U.S.C. § 1983 alleging violations of her civil rights guaranteed under the United States Constitution. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory. . .

---

[1] A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

5

> subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV. ANALYSIS

A. State Actor

Rodocker, the inmate who assaulted Rhoades, is named as a defendant. When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West, 487 U.S. at 48; Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

Rodocker is not a state actor and, therefore, the § 1983 claim raised against her fails as a matter of law.

B. Respondeat Superior

Rhoades alleges that the administration was aware that hot-pots have been used as weapons but, nonetheless, allows inmates

access to them. She also alleges that as an inmate she has a reasonable expectation to be safe and free from assault/harm and to be protected by the staff and administration at the BWCI.[2]

Rhoades appears to name administration personnel as defendants based upon their supervisory positions. The Complaint contains few allegations directed towards the supervisory defendants other than to mention that Rhoades wrote to the Warden and Deputy Warden following her injury and that the Warden and a correctional officer looked at her injuries.

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. Brito v. United States Dep't of Justice, 392 F.

---

[2] This issue will be addressed in the Opinion's Failure to Protect section.

App'x 11, 14 (3d Cir. 2010) (not published) (citing Iqbal, 129 S.Ct. at 1948-49); Rode v. Dellarciprete, 845 F.2d at 1207).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S.Ct. at 1948 (2009). In Iqbal, the Supreme Court emphasized that "[i]n a § 1983 suit or a Bivens action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under Bivens or § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." Dodds v. Richardson, 614 F.3d 1185, 1198 (10th Cir. 2010), cert. denied, __ U.S. __, 131 S.Ct. 2150 (2011) (quoting Iqbal, 129 S.Ct. at 1949). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. Id.

Under pre-Iqbal Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy,

practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)) (second alteration in original)). "Particularly after Iqbal, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." Id. at 130.

The Third Circuit has recognized the potential effect that Iqbal might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether Iqbal requires narrowing of the scope of the test. Santiago, 629 F.3d at 130 n.8; see, e.g., Argueta v. United States Immigration and Customs Enforcement, 643 F.3d 60, 70 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether Iqbal eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."); Bayer v. Monroe County Children and Youth Servs.,

577 F.3d 186, 190 n.5 (3d Cir. 2009) (In light of Iqbal, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official.). Hence, it appears that, under a supervisory theory of liability, and even in light of Iqbal, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.[3] Williams v. Lackawanna County Prison, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm

---

[3] "'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." Sample v. Diecks, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." Id. at 1116-17.

suffered by the plaintiff. See Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also Iqbal, 129 S.Ct. at 1949-54; City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, 128 F. App'x 240 (3d Cir. 2005) (not published).

Rhoades wrote letters of complaint and submitted grievances following the incident with Rodocker. Participation in the after-the-fact review of a grievance, however, is not enough to establish personal involvement. See, e.g., Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (not published) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation). See also Cole v. Sobina, 2007 WL 4460617 (W.D. Pa. 2007); Ramos v. Pennsylvania Dep't of Corr., 2006 WL 2129148 (M.D. Pa. 2006). Hence, the allegations do not aid Rhoades in raising claims against the prison administration.

Moreover, Rhoades provides no specific facts how the administration (i.e., Commissioner Carl Danberg, Deputy Commissioner Thomas Carroll, Warden Caple, and Deputy Warden Carter) violated her constitutional rights, that they expressly directed the deprivation of her constitutional rights, or that they created policies wherein subordinates had no discretion in

11

applying them in a fashion other than the one which actually produced the alleged deprivation.

Therefore, the Court will dismiss as frivolous the claims against the administration defendants pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

C.  Failure to Protect

Rhoades alleges that as an inmate she has a reasonable expectation to be safe and free from assault/harm and to be protected by the staff and administration at the BWCI.  To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) she is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element).  See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994); see also Griffin v. DeRosa, 153 F. App'x 85 (3d Cir. 2005) (not published).  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."  Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  "Whether prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference

12

from circumstantial evidence, and a fact finder may conclude that . . . prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. The Complaint contains the general allegation that the administration was aware that hot-pots had been used as weapons in the past and that they should have protected Rhoades from assault and harm. However, there are no allegations that any defendant knew Rodocker was a risk to Rhoades or that any defendant disregarded the risk that Rodocker would attack Rhoades.

The Complaint does not allege conditions that are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. Nor do the allegations satisfy the subjective component of an Eighth Amendment failure to protect claim because no defendant is alleged to have prior knowledge that Rodocker presented a danger to Rhoades. Therefore, the Court will dismiss the claim for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

D. <u>Medical Needs</u>

While not clear, it seems that Rhoades takes issue with the medical treatment she received for the injuries sustained on May 30, 2011. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-

105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer, 511 U.S. at 837. A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. Estelle v. Gamble, 429 U.S. 97, 107 (1976). Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); see also Daniels v. Williams, 474 U.S. 327, 332-34 (1986) (negligence is

14

not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

Even when reading the Complaint in the most favorable light to Rhoades, she fails to state an actionable constitutional claim against Defendants for deliberate indifference to a serious medical need. Rather, it is clear from the allegations that Rhoades received medical treatment for her injuries.

The allegations do not rise to the level of a constitutional violation. Accordingly, the Court will dismiss the claim for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## V. CONCLUSION

Therefore, for the reasons set forth above, the Complaint will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The Court notes it is unfortunate that Ms. Rhoades was hurt by an inmate, against whom she may seek appropriate relief in a Delaware state court if she chooses. But nothing in this Complaint gives grounds to believe that any prison official violated a right of constitutional dimension. The dismissal is without prejudice to Plaintiff's right to attempt to cure these pleading deficiencies by an appropriate motion to amend the complaint.

An appropriate Order accompanies this Opinion.

_____
JEROME B. SIMANDLE
United States District Judge

Date: Nov. 9, 2011